PROCEDURAL HISTORY ¶ 1. On October 31, 2006, Mary Cooper was convicted of murder by a jury in the Circuit Court of Winston County. Cooper was sentenced to serve a term of life in the custody of the Mississippi Department of Corrections. On appeal, Cooper assigns the following points of error: (1) the trial court erred in denying a jury instruction for heat of passion manslaughter, (2) the court's instructions to the jury regarding culpable negligence manslaughter and depraved heart murder were confusing to the jury or improperly stated the law, (3) the verdict was not supported by the evidence, and (4) the trial court improperly allowed statements of opinion to be admitted into evidence.
 ¶ 2. Finding no error, we affirm.
 FACTS ¶ 3. On September 5, 2004, Vincent Hudson, Joe Mack Speight, and Derrick Edwards, after a morning of drinking alcohol heavily, visited the trailer home of Mary Cooper in Winston County.
 ¶ 4. Hudson and several other witnesses at trial testified that Hudson and Cooper began arguing. Hudson and Cooper had known each other for years and, according to Hudson, were in a romantic relationship. Hudson testified that he "choked" Cooper "a little bit" and pushed her down. Hudson, Speight, and Edwards then left Cooper's trailer. Hudson and Edwards got into a Ford Explorer parked outside. Edwards sat in the driver's seat and Hudson was in the passenger seat. Before they could drive away, multiple gun shots were fired. Hudson ducked when he heard the gunshots. After the shooting *Page 1222 
stopped, he sat up and saw Edwards, still in the driver's seat, covered in blood and dead. Hudson did not see who fired the shots. Speight testified that he was standing outside the Explorer near Cooper's trailer and saw Cooper fire a pistol multiple times from the front door of her trailer in the direction of the Explorer. Lee Hardy, Cooper's niece, also testified that she saw Cooper shoot Edwards from the front doorway of the trailer.
 ¶ 5. Hardy testified that after the shooting, Cooper gave her the murder weapon to deliver to Hardy's mother, who is Cooper's sister. The mother accepted the pistol and set it somewhere outside. Hardy's father, Lonnie Ingram, found the pistol, took it to his house, and buried it in his backyard. When police officers arrived at Ingram's home, Ingram promptly directed the officers to the buried pistol. The pistol was a 38 caliber. Hudson testified that Cooper owned a weapon of this caliber. Also, an unfired cartridge of this caliber was found by the police next to the front door of Cooper's trailer.
 ¶ 6. Cooper testified in her own defense. Her position was that she had nothing to do with Edward's death. Contrary to the testimony of other witnesses, Cooper denied that she had engaged in an argument with Hudson, that any physical contact between herself and Hudson had occurred, that she had fired a gun, that she owned a gun, and that Hardy was at her trailer on the day of the shooting.
 ¶ 7. Cooper claimed that Hudson and/or Speight killed Edwards, possibly over a gambling debt, because Edwards had won a substantial amount of money the previous night. Ethyl Jackson, a mutual friend of Hudson and Cooper, testified for the defense that she overheard Hudson and Speight plotting to rob Edwards. Cooper alleged that Hardy's parents convinced her to fabricate the story. Cooper also implied that Hardy's parents conspired with Hudson regarding the burial of the gun. Finally, Cooper emphasized that Hudson and Speight had been drinking heavily all day and using drugs.
 ¶ 8. Hardy was the only witness who testified that Cooper's gunfire was in retaliation to gunfire by Hudson. Expert testimony was presented at trial that gunpowder residue was found on Hudson following the shooting. According to the expert, the gunpowder residue on Hudson indicated that he was standing within three feet of a pistol when it was discharged. The expert testified that the residue from a pistol fired from the doorway of the trailer would not have reached him in the passenger seat of the Explorer. Cooper tested negative for gunpowder residue. However, she was tested seven hours after Edwards's death and testimony indicated that she had washed her hands following the shooting. According to the expert, both of these factors would have reduced the likelihood that the test would yield positive results.
 DISCUSSION I. DID THE TRIAL COURT ERR IN DENYING THE HEAT OF PASSION MANSLAUGHTER INSTRUCTION?
 ¶ 9. In her first issue on appeal, Cooper argues that the trial court erred in denying a heat of passion manslaughter jury instruction. The trial court enjoys considerable discretion regarding the form and substance of jury instructions, demons v. State, 952 So.2d 314,317 (¶ 8) (Miss.Ct.App. 2007). The defendant is entitled to have instructions given that present her theory of the case unless an instruction "incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Livingston v. State, 943 So.2d 66,71 (¶ 14) (Miss.Ct.App. 2006). *Page 1223 
 ¶ 10. Cooper argues that a heat of passion jury instruction should have been given because the doctrine of transferred intent applies to heat of passion manslaughter. She contends that a heat of passion instruction was warranted because of Hudson's and Hardy's testimony that she and Hudson had a physical altercation before the killing occurred. However, Cooper herself denied recalling any confrontation between herself and Hudson. Further, Hudson was not the ultimate victim, and the victim, Edwards, had no role in the alleged provocation. The issue of whether transferred intent may apply to heat of passion manslaughter has not been definitively decided by Mississippi case law. However, we decline to answer this question because we find no foundation in the evidence for a heat of passion manslaughter instruction.
 ¶ 11. Heat of passion manslaughter is "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense. . . ." Miss. Code Ann. § 97-3-35 (Rev. 2006). Our case law has defined heat of passion as follows:
 A state of violent and uncontrollable rage engendered by a blow or some other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
Clemons, 952 So.2d at 319 (¶ 14). The law is well-settled that words alone are not enough to require a heat of passion manslaughter instruction. Myers v. State,832 So.2d 540, 542 (¶ 10) (Miss.Ct.App. 2002). Pushing or shoving is also insufficient to require the instruction absent testimony that the defendant was acting out of violent or uncontrollable rage. Turner v. State, 773 So.2d 952,954 (¶ 8) (Miss.Ct.App. 2000). In the case sub judice, the record indicates nothing more than a verbal argument and perhaps some pushing, tussling, and/or choking "a little bit." Neither Hudson nor Hardy testified in detail about the verbal or physical altercation, and neither testified that Cooper was in a state of violent and uncontrollable rage.
 ¶ 12. Turner is analogous to the case at bar. InTurner, the defendant himself testified that he had no part in the victim's death. Id. While at a party, the defendant engaged in a shoving match with the eventual victim and pushed the victim over a table. Id. The defendant responded by shooting the victim in the chest. Id.
at 953 (¶ 2). The trial judge instructed the jury on murder but denied the requested instruction for heat of passion manslaughter. Id. at 954 (¶ 5). The jury found the defendant guilty of murder. The supreme court affirmed the conviction on appeal, holding that the evidence did not support the instruction for heat of passion manslaughter. Id.
at 954-55 (¶¶ 8-12). We find Turner instructive here.
 ¶ 13. The verbal argument and the physical confrontation between Cooper and Hudson are, as in Turner, insufficient to require a heat of passion manslaughter instruction. The record is void of any evidence that Cooper was in a state of violent and uncontrollable rage. Additionally, like the defendant in Turner, Cooper denied shooting the victim. Cooper even went further and denied that any physical or verbal altercation took place. Even if Hardy's testimony that Hudson fired a gun at Cooper and that Cooper's shots were in response was true, a self-defense instruction, *Page 1224 
which Cooper did not submit, would have been appropriate rather than a heat of passion manslaughter instruction. Moreover, the jury was provided the option of convicting Cooper of the lesser-included offense of culpable negligence manslaughter. Bearing in mind that "lesser-included offense instructions should not be indiscriminately granted," we find that no injustice has occurred by the denial of the heat of passion instruction since it lacked evidentiary support.Havard v. State, 928 So.2d 771, 790 (¶ 30) (Miss. 2006) (quoting Lee v. State, 469 So.2d 1225,1230 (Miss. 1985)). Accordingly, we find Issue I without merit.
 II. WERE THE JURY INSTRUCTIONS CONFUSING AND/OR INCORRECT STATEMENTS OF LAW?
 ¶ 14. Cooper argues that the jury instructions requested by the State and accepted by the trial court for murder and culpable negligence manslaughter were confusing to the jury or improperly stated the law. However, in order for this Court to consider a jury instruction issue on appeal, the defendant must have made a specific objection to the jury instruction in question at the trial level. Harris v. State,861 So.2d 1003, 1013 (¶ 18) (Miss. 2003). In addition, a trial court has no obligation to provide jury instructions suasponte. Gray v. State, 728 So.2d 36, 60 (¶ 111) (Miss. 1998). Since Cooper made no specific objection to the instructions regarding culpable negligence manslaughter and depraved heart murder, this issue is procedurally barred.
 III. WAS THE VERDICT UNSUPPORTED BY SUFFICIENT EVIDENCE OR AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
 ¶ 15. Although not articulated as such, Cooper argues that the verdict was not supported by the sufficiency and weight of the evidence. Since these claims each have a different standard of review, they will be analyzed separately.
 ¶ 16. First, in reviewing whether the evidence supporting a jury verdict is legally sufficient, this Court does not ask whether from the evidence we would have voted to convict or acquit. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss. 2005). Rather, we inquire whether, viewing the evidence in the light most favorable to the prosecution, a rational juror could have concluded beyond a reasonable doubt that all elements of the crime were satisfied. Id. The proper remedy for insufficient evidence is for the Court to reverse and render. Id.
 ¶ 17. After a thorough review of the record, construing the evidence in favor of the prosecution, we find that a rational juror could conclude beyond a reasonable doubt that Cooper was guilty of murder. The instructions for deliberate design murder and depraved heart murder were submitted together for the jury's consideration. Although the evidence for deliberate design murder appears slight, we need not consider it because the evidence for depraved heart murder was substantial. Mississippi Code Annotated Section 97-3-19(1)(b) (Rev. 2006) defines depraved heart murder as follows:
 The killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done in the commission of an act eminently [sic] dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual[.]
 ¶ 18. The classic example of depraved heart murder is shooting into a crowd of people. Lett v. State,902 So.2d 630, 637 (¶ 21) (Miss.Ct.App. 2005). Here, *Page 1225 
Speight and Hardy were eyewitnesses to the shooting and both testified that Cooper fired at an occupied vehicle. We fail to see how this act is any different from shooting into a crowd, and, in light of the testimony of these two eyewitnesses, we find that a rational juror could conclude that Cooper committed depraved heart murder.
 ¶ 19. Second, in reviewing a weight of the evidence issue, we will not reverse unless the verdict is "so contrary to the overwhelming weight of evidence that to allow it to stand would sanction an unconscionable injustice." Bush,895 So.2d at 844 (¶ 18). The reviewing court weighs the evidence in the light most favorable to the verdict. Id. If the verdict is contrary to the overwhelming weight of the evidence, the proper remedy is a new trial, but this remedy is reserved for "exceptional cases in which the evidence preponderates heavily against the verdict." Id. Unlike reversal for insufficiency of the evidence, reversal based on the weight of the evidence does not mean that acquittal was the only appropriate remedy, but simply that the court, sitting as a hypothetical "thirteenth juror," disagrees with the jury's assessment of conflicting testimony and therefore believes that a new trial is necessary. Id.
 ¶ 20. In the present case, the jury was presented with contradictory evidence. Most notably, Hardy testified that Hudson had fired gunshots at Cooper, which contradicted Hudson's testimony that he neither fired a gun nor had a gun in his possession on the date of Edwards's death. Also, there was the unexplained gunpowder residue on Hudson. Nevertheless, two eyewitnesses testified that Cooper fired a gun at an occupied vehicle. Speight testified to seeing Cooper fire at the occupied vehicle from the front door of her trailer, and Hardy testified that she saw Cooper shoot the victim and then a family member buried the murder weapon at Cooper's request. Hudson did not see who fired the shots, but his testimony added to the evidence against Cooper. Viewing the record as a whole and in the light most favorable to the verdict, we cannot say that allowing the verdict to stand would sanction an unconscionable injustice. We find no merit to this issue.
 IV. DID THE TRIAL COURT IMPROPERLY ALLOW STATEMENTS OF OPINION TO BE ADMITTED INTO EVIDENCE?
 ¶ 21. In her final issue on appeal, Cooper argues that the trial court improperly allowed statements of opinion to be admitted into evidence. Greg Clark, an investigator for the Louisville, Mississippi, Police Department, testified at trial that he examined the Explorer, in which Edwards was seated when he was shot, by placing colored dowel rods into the bullet holes in the vehicle in order to assess the bullets' angles of entry. Clark measured the distance from the vehicle to the front door of Cooper's trailer and shined a laser beam from the bullet holes to determine where the gunshots that killed Edwards had originated. Clark testified as a lay witness that he believed that the bullet holes in the vehicle showed that one or more shots had been fired from approximately four feet above ground level from the doorway of Cooper's trailer. Pictures showing the positioning of the colored dowels were entered into evidence.
 ¶ 22. Defense counsel did not contemporaneously object to Clark's testimony or the pictures. Towards the end of cross-examination, defense counsel requested that Clark's testimony be struck from the record and that the jury be instructed to disregard the testimony and the pictures, which the trial judge denied. The following is an excerpt from the record: *Page 1226 
 BY MR. BRIDGES (Defense Counsel): Are you an expert on —
 BY CLARK: — no, sir —
 Q. — on the laser beam?
 A. No, sir.
 Q. Are you an expert accident reconstructionist?
 A. No, sir.
 BY MR. BRIDGES: Your Honor, at this time we move that these pictures be struck and the testimony regarding where the laser put the shooting at the door be struck and the jury to disregard it.
 BY THE COURT: Haven't they already been admitted?
 BY MR. HOWIE (Prosecutor): Yes, sir. They have.
 BY THE COURT: Overruled.
 BY MR. BRIDGES: I am now asking for it to be struck.
 BY THE COURT: You should have objected back then. It's overruled.
 ¶ 23. On appeal, the defense argues that the trial court improperly allowed Clark to provide testimony outside the scope of permissible lay testimony and intruding into the realm of the expert. The State argues that, with no contemporaneous objection having been made to Clark's testimony, the defendant is procedurally barred from raising this issue. The State citesDixon v. State, 953 So.2d 1108, 1116 (¶¶ 21-22) (Miss. 2007), in support of this assertion. In Dixon, however, no objection was made to the testimony at the trial level and the issue was raised for the first time on direct appeal. Id. at (¶ 21). In the case at bar, no contemporaneous objection to Clark's testimony was raised, but defense counsel did later request that the testimony of Clark be struck from the record. Defense counsel did not object to the testimony or the pictures until the proceedings were well into Clark's cross-examination. Clark had already been thoroughly questioned regarding his findings and the pictures had long been admitted into evidence. We find that the defendant is procedurally barred from raising this issue on appeal.
 ¶ 24. Notwithstanding the procedural bar, this issue lacks merit. Even if it were error for the trial judge to admit Clark's testimony, the error was harmless. The law is settled that "[f]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party." Palmer v.Volkswagen of Am., Inc., 904 So.2d 1077, 1092 (¶ 65) (Miss. 2005) (quoting Terrain Enter., Inc. v. Mockbee,654 So.2d 1122, 1131 (Miss. 1995)). Here, there was no harm or prejudice to the defendant because of the evidence in question. Clark's testimony was merely cumulative of the testimony of the two eyewitnesses, Speight and Hardy, who testified that Cooper fired multiple shots at the vehicle from the doorway of her trailer. The pictures were likewise corroborative. Therefore, if the trial judge committed error, it was harmless and does not warrant reversal.
 ¶ 25. THE JUDGMENT OF THE WINSTON COUNTY CIRCUIT COURTOF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OFTHE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO WINSTON COUNTY.
KING, C.J., MYERS, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY. *Page 1227