MYERS, P. J.,
 

 for the Court.
 

 ¶ 1. Fred Henry Beale appeals the judgment of the Circuit Court of Hinds County that found him guilty of capital murder and sentenced him to serve a term of life in the custody of the Mississippi Department of Corrections. Beale appeals his conviction, claiming that: (1) the trial court erred in peremptorily finding him guilty of burglary; (2) the trial court erred in not allowing him to argue self-defense; (3) the trial court erred in refusing to allow him to argue self-defense pursuant to the State’s jury instruction; (4) the trial court erred in refusing his manslaughter jury instruction; (5) the trial court erred by showing bias against him; and (6) the cumulative effect of errors warrants reversal.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. The following case arises out of the shooting death of Leon Thomas, Jr., by Beale. The shooting occurred in the home of Ulander Taylor. Beale had been romantically involved with Taylor for more than fifteen years and that relationship had produced an eleven-year-old child. Taylor testified that Thomas was at her home dropping off boxes to assist her in her upcoming move when Beale arrived at her door.
 

 ¶ 3. At trial, Beale testified that he called Taylor while en route to her apartment, but she informed him not to come to her home since she was about to leave. However, Beale claimed he responded that he was almost there and would just continue to her home, and Taylor did not tell him not to come over. However, Taylor testified that she instructed Beale not to come to her home. Beale claimed that when he arrived at the apartment he had no knowledge that Thomas was at Taylor’s home.
 

 ¶ 4. Beale claimed that when he arrived and knocked on the locked door, no one responded and he kicked in the door out of frustration because he knew Taylor was still inside. Taylor testified that she was on the phone with her sister, Deloise Allen, when Beale arrived at her home. The State alleged that Taylor did not let Beale inside her home or give him permission to come inside. Taylor testified she heard Beale knocking and that she was going to open the door and let Beale in because he was about to knock the door down. Beale admitted he carried a nine-millimeter gun inside the home on the day of the shooting. However, he and Taylor testified that he always carried his gun with him when he visited her apartment because his vehicle had been broken into several times.
 

 ¶ 5. Beale testified at trial that he merely intended to go inside to talk to Taylor. However, after gaining entry into her apartment, Beale hit Taylor with the nine-millimeter gun, injuring her and knocking her unconscious, which Taylor and Beale confirmed by their testimonies. Beale also claimed that Thomas, who was in the bedroom, was pointing a gun at him. Beale claims the alleged gun Thomas pointed at him was actually purchased by Beale for Taylor to keep at her home. Beale testified that Taylor kept the gun at her home and had recently placed it on a dresser in her bedroom because she was packing. Taylor testified that the gun Beale claimed Thomas pointed at him did not have a clip when Beale gave her the gun. She testified that Beale knew the gun did not have any ammunition. Beale claimed he fired a warning shot into the bedroom in self-defense to let Thomas know he also had a gun. Beale admitted the “warning shot”
 
 *696
 
 hit. Thomas in the left side, fatally wounding him.
 

 ¶ 6. At that point, Taylor testified that she had regained consciousness, and Beale told her to call for an ambulance because he had shot Thomas. Beale then left the scene in his vehicle. Beale claimed that after he shot Thomas, he picked up the gun Thomas allegedly pointed at him and threw it out of his vehicle on Highway 220 in the ensuing panic and confusion. Taylor testified at trial that after the night of the shooting she never saw the gun she previously had placed on the dresser. Beale traveled to his uncle’s home and was later contacted by the police. The police informed him that Thomas was going to be okay, and Beale subsequently traveled to the Clinton Fire Department to turn himself in. Beale was then informed that Thomas had died.
 

 STANDARD OF REVIEW
 

 ¶ 7. When reviewing a challenge to a trial court’s refusal of a jury instruction, this Court will look at the jury instructions actually given as a whole, and “if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Johnson v. State,
 
 956 So.2d 358, 362(¶ 7) (Miss.Ct.App.2007) (quoting
 
 Williams v. State,
 
 803 So.2d 1159, 1161(117) (Miss.2001)). Additionally, a jury instruction may be refused if it “incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.”
 
 Id.
 
 (quoting
 
 Ladnier v. State,
 
 878 So.2d 926, 931(¶ 20) (Miss.2004)). Also, with regard to a trial court's impartiality, an appellate court “will not hesitate to reverse where the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution.”
 
 Layne v. State,
 
 542 So.2d 237, 242 (Miss.1989) (citing
 
 West v. State,
 
 519 So.2d 418, 422-24 (Miss.1988)).
 

 DISCUSSION
 

 I. WHETHER THE TRIAL COURT PEREMPTORILY FOUND BEALE GUILTY OF BURGLARY BY PROHIBITING HIM FROM ARGUING SELF-DEFENSE.
 

 ¶ 8. Beale argues that whether or not he was guilty of burglary was a question of fact for the jury. Therefore, Beale contends the trial court peremptorily found him guilty of burglary as a result of its decision to prohibit him from claiming self-defense or submitting a self-defense instruction to the jury. Beale argues that evidence was presented at trial to demonstrate that he did not break and enter Taylor’s home with the intent to commit a crime, and the State did not prove every element of burglary beyond a reasonable doubt. Specifically, Beale argues that the State failed to prove he had the intent to commit some crime upon entering Taylor’s apartment. Beale argues that he was not granted the proper instructions which would have allowed the jury to consider that he did not commit a burglary. Beale testified at trial that he only intended to talk to Taylor once inside the apartment. Beale argues that when he attempted to explain to the jury that he had no intention of committing a crime when he entered the apartment on the night in question, the trial court disallowed that testimony. Beale further points to testimony at trial by Taylor, which he contends established that Taylor was in the process of voluntarily opening the door to let him in when he kicked it open. Taylor testified at trial that she was going to let him in voluntarily because she had nothing to hide and that Beale did not have to kick in the door to gain entry. Beale argues that his claim of self-defense could only be barred if the
 
 *697
 
 jury found that he was guilty of burglary. Beale argues the trial court erred by denying his jury instructions D-14 and D-15 and his self-defense instructions D-l, D-2, D-3, D-4, D-8, and D-12.
 

 ¶ 9. The State argues the trial court properly denied Beale’s request for a self-defense instruction. The State argues that Beale in essence admitted to the burglary. The State argues that Beale is attempting to argue that his claim of self-defense, which arose after he entered the apartment, would somehow go back in time and justify his breaking and entering.
 

 ¶ 10. The main jury instructions at issue with this alleged assignment of error are refused instructions D-14 and D-15. D-14, which reads in its entirety as follows: “The Court instructs the Jury that if you find from the evidence in this case that on or about March 26, 2005, Fred H. Beale did break and enter the dwelling of Ulan-der Taylor without the intent to commit some crime therein, then your duty under the law is to find the Defendant, Fred H. Beale, ‘not guilty’ of the underlying offense of capital murder of Leon Thomas, Jr., as charged in the indictment herein.” D-15 reads in its entirety as follows: “The Court instructs the Jury that to find Defendant, Fred H. Beale, guilty of capital murder, you must first find, beyond a reasonable doubt, that Fred Beale, did unlawfully break and enter the dwelling of Ulan-der Taylor with the intent to commit some crime therein. Therefore, if the State has failed to prove beyond a reasonable doubt that Fred Beale entered Ulander Taylor’s dwelling without her permission, and that he entered with the intent to commit some crime, then you must find that the Defendant, Fred H. Beale, ‘not guilty’ of the underlying offense of capital murder of Leon Thomas, Jr., as charged in the indictment herein.”
 

 ¶ 11. The underlying crime Beale was charged with to elevate the murder charge to capital murder was burglary under Mississippi Code Annotated section 97-17-23 (Rev.2006), which reads in its entirety as follows:
 

 Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) years nor more than twenty-five (25) years.
 

 “The statute requires breaking and entering with the intent to commit some crime in order to constitute burglary.”
 
 Stevens v. State,
 
 806 So.2d 1031, 1045(¶ 56) (Miss.2001) (citing Miss.Code Ann. § 97-17-23).
 

 ¶ 12. Beale was charged with capital murder pursuant to Mississippi Code Annotated section 97-3-19(2)(e) (Rev.2006), which is defined, in part, as:
 

 (2) The killing of a human being without the authority of law by any means or in any manner shall be capital murder in the following cases: ... (e) When done with or without any design to effect death, by any person engaged in the commission of the crime of ... burglary ... or in any attempt to commit such felonies.
 

 “Unlike other sections of the capital murder statute, Subsection 2(e) does not require the prosecution to prove the elements of murder, only that a killing took place while the accused was ‘engaged in the commission’ of the enumerated felonies.”
 
 Layne,
 
 542 So.2d at 243. In that case, one of the central issues was “to what degree are felons to be held strictly accountable for a death resulting in the
 
 *698
 
 course of their felonious acts.”
 
 Id.
 
 at 242. Layne argued on appeal “that self-defense is an appropriate defense in a capital murder.”
 
 Id.
 
 at 243. However, the court disagreed and determined that “there appears no reasonable basis upon which the jury may rationally have concluded that Layne had not participated actively in the robbery of George Edwards and killed Edwards in his effort to escape therefrom.”
 
 Id.
 
 That court reasoned that the purpose behind the felony-murder rule was to deter even accidental killings in the commission of certain felonies by holding those guilty strictly liable for even accidental killings.
 
 Id.
 
 (citing
 
 Davis v. State,
 
 597 S.W.2d 358, 360 (Tex.Crim.App.1980)). “[T]he rule assumes the absence of a reasonable basis upon which the jury may have disbelieved the prosecution’s evidence of the underlying felony.”
 
 Id.
 
 at 244. Finally, “Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense.”
 
 Id.
 
 (citing
 
 Patrick v. State,
 
 285 So.2d 165, 168 (Miss.1973)). Accordingly, this assignment of error is without merit.
 

 II. WHETHER THE TRIAL COURT ERRED IN DENYING BEALE’S ATTEMPT TO ARGUE SELF-DEFENSE AT TRIAL.
 

 ¶ 13. Beale argues that it was reversible error for the trial court to dismiss the relevance of Thomas’s gun and that the trial court’s instructions regarding the second gun were tantamount to a peremptory instruction of guilt. Beale argues he only acted in necessary self-defense when he shot the victim, and he presented testimony regarding his actions. Beale testified at trial that he had no knowledge that another man was in Taylor’s home at the time he entered. Beale further testified that he saw a gun coming toward him, was fearful, and he reacted by shooting what he referred to as a single warning shot. Beale argues that this can only be classified as either an accident or self-defense. Beale contends that the trial court improperly refused to allow jury instructions D-7 and D-8. Beale argues there was sufficient evidence to support a jury instruction regarding self-defense. Beale lists the following evidence that he contends would support this instruction: Taylor testified that the .22 pistol Beale had given her was on the dresser in the bedroom where Thomas was shot and that she never saw the gun again after the shooting. Taylor also testified that Beale told her he shot Thomas in self-defense, in response to Thomas aiming the same .22 pistol at him. Beale additionally testified that he took the .22 pistol and later threw it out of his car window, while he was in a state of panic, after the shooting. Beale argues that the testimony of the medical expert in forensic pathology, Dr. Steven Hayne, refuted the State’s theory that Thomas was sitting down when he was shot. Beale contends Dr. Hayne’s testimony established that Thomas’s injuries were consistent with the trajectory of the bullet entering his left side under his arm and exiting his right side, as if Thomas were turned sideways, with his left hand raised. Beale also points out that he was prohibited from arguing that he shot Thomas in self-defense, and that the jury was instructed to ignore any comments made by Beale regarding the alleged gun Thomas was holding at the time of the shooting. Beale argues that the State then referred to the same gun, the gun that Thomas was allegedly holding at the time he was shot, during its cross-examination of Beale. Beale argues that the evidence regarding the second gun could have exculpated him. Beale points out that the State was allowed to refer to the second gun again during its closing argument. Beale argues that it was prejudicial for the trial court to state that Thomas’s gun was irrelevant in light of the fact that the State argued
 
 *699
 
 during its closing argument that the gun never existed. In summary, Beale argues that he was entitled to present his theory of self-defense, and the trial court erred in instructing the jury to disregard the fact that Beale alleged the decedent was pointing a gun at him at the time of the shooting.
 

 ¶ 14. The State argues that because Beale admitted to kicking in the door, entering with a gun, and hitting Taylor, Beale was precluded from any right to present a theory of self-defense. The State contends that “[i]f a person provokes a difficulty, arming himself in advance, and intending, if necessary, to use his weapon and overcome his adversary, he becomes the aggressor, and deprives himself of the right of self-defense.”
 
 Chandler v. State,
 
 946 So.2d 355, 363(¶ 32) (Miss.2006) (quoting
 
 Parker v. State,
 
 401 So.2d 1282, 1286 (Miss.1981)). The State argues that since Beale admitted in his testimony that he entered the fray armed with a weapon, he was not entitled to a self-defense instruction.
 

 ¶ 15. In light of the reasoning articulated under Issue I, this Court finds that this assignment of error is without merit.
 

 III. WHETHER THE TRIAL COURT ERRED IN DENYING BEALE’S ATTEMPT TO ARGUE SELF-DEFENSE IN HIS CLOSING ARGUMENT IN LIGHT OF THE CAPITAL MURDER JURY INSTRUCTION.
 

 ¶ 16. Beale argues it was error for the trial court to allow instruction S-1A, which stated that the jury could convict Beale of capital murder if it found that Beale shot and killed Thomas while committing house burglary ... “not in necessary self-defense.” Beale argues that this was error because the trial court did not allow him to argue self-defense in his closing argument, which misled and confused the jury regarding self-defense.
 

 ¶ 17. The State argues that Beale was not entitled to argue self-defense as a matter of law. The State argues that since Beale entered the premises with a gun in hand without being aware of any danger, he is thereby denied any right to claim self-defense.
 

 ¶ 18. Mississippi adheres to the common law rule that an aggressor is precluded from pleading self-defense.
 
 Layne,
 
 542 So.2d at 244 (citing
 
 Patrick,
 
 285 So.2d at 168 (Miss.1973)).
 

 ¶ 19. Furthermore, “an instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions.”
 
 Hunter v. State,
 
 684 So.2d 625, 635 (Miss.1996). While the portion of the capital murder jury instruction reading, “not in necessary self-defense,” was inappropriate, it was harmless error. “Error is harmless if it is clear beyond a reasonable doubt that it did not contribute to the verdict.”
 
 Conley v. State,
 
 790 So.2d 773, 793(¶72) (Miss.2001) (citation omitted). Beale was properly precluded from arguing self-defense at trial as he was charged under the capital murder statute. Therefore, this Court finds no merit to this assignment of error.
 

 IV. WHETHER BEALE WAS IMPROPERLY DENIED THE LESSER-INCLUDED-OFFENSE MANSLAUGHTER JURY INSTRUCTIONS.
 

 ¶ 20. Beale argues that the jury should have been allowed to consider the lesser-included offense of manslaughter, but the trial court improperly refused the jury instructions regarding manslaughter. Beale argues that he should have been allowed to either argue the lesser-included offense of manslaughter in the heat of passion or argue imperfect self-
 
 *700
 
 defense. Beale argued that his testimony and Taylor’s testimony supported these two theories.
 

 ¶ 21. The State argues that Beale was not entitled to a manslaughter instruction based on the testimony he gave at trial. The State argues that even if angry words were exchanged, “words alone ... or mere disagreements are not enough to require a heat-of-passion - instruction.”
 
 Myers v. State,
 
 832 So.2d 540, 542(¶ 10) (Miss.Ct.App.2002) (citing
 
 Gates v. State,
 
 484 So.2d 1002, 1005 (Miss.1986)). Additionally, the State argues that criminal intent can be inferred from the fact that he kicked in the door to the premises, possessed a deadly weapon, and assaulted Taylor with the gun before shooting Thomas. Therefore, the State argues that there are no facts supporting a claim of imperfect self-defense.
 

 ¶22. “Where a party offers evidence sufficient that a rational jury might find for him on the particular issue, that party of right is entitled to have the court instruct the jury on that issue and through this means submit the issue to the jury for its decision.”
 
 Sheppard v. State,
 
 777 So.2d 659, 663(¶ 15) (Miss.2000) (quoting
 
 Anderson v. State,
 
 571 So.2d 961, 964 (Miss.1990)). Thus, “the court may properly refuse an instruction if it states the law incorrectly, is covered elsewhere in the instructions, or is
 
 without an evidentiary foundation.” Cotton v. State,
 
 933 So.2d 1048, 1050(¶ 7) (Miss.Ct.App.2006) (emphasis added) citing
 
 Heidel v. State,
 
 587 So.2d 835, 842 (Miss.1991). Additionally, the Mississippi Supreme Court has previously held that “where the killing occurred during the course of a robbery, the defendant is not entitled to a manslaughter instruction.”
 
 Simmons v. State,
 
 805 So.2d 452, 474(¶ 32) (Miss.2001) (citing
 
 Burns v. State,
 
 729 So.2d 203, 225 (¶ 103) (Miss.1998)). This Court must determine whether the trial court improperly denied Beale a manslaughter jury instruction.
 

 ¶ 23. The Mississippi Supreme Court has previously defined heat-of-passion manslaughter as:
 

 a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 Tait v. State,
 
 669 So.2d 85, 89 (Miss.1996) (quoting
 
 Buchanan v. State,
 
 567 So.2d 194, 197 (Miss.1990)). “Pushing or shoving is also insufficient to require the [heat-of-passion-manslaughter] instruction absent testimony that the defendant was acting out of violent or uncontrollable rage.”
 
 Cooper v. State,
 
 977 So.2d 1220, 1223(¶ 11) (Miss.Ct.App.2007) (citing
 
 Turner v. State,
 
 773 So.2d 952, 954(¶8) (Miss.Ct.App.2000)).
 

 ¶ 24. Further, imperfect self-defense is where “an intentional killing may be considered manslaughter if done without malice but under a bona fide (but unfounded) belief that it was necessary to prevent death or great bodily harm.”
 
 Smiley v. State,
 
 815 So.2d 1140, 1146(¶ 22) (Miss.2002) (quoting
 
 Wade v. State,
 
 748 So.2d 771, 775(¶ 12) (Miss.1999)).
 

 ¶ 25. Therefore, there must be evidence present in the record that would have supported a manslaughter instruction if Beale’s contention that the trial court improperly denied the instruction is to be found meritorious. Under the facts presented in the record, Beale admitted kicking in the door to Taylor’s apartment. Beale also admitted to hitting Taylor in
 
 *701
 
 the head with a nine-millimeter gun upon entering her home, knocking her unconscious for a short period of time. After knocking Taylor unconscious, Beale admitted to spotting Thomas in the bedroom, but he claimed that Thomas pulled a gun on him, forcing him to resort to self-defense by shooting Thomas. However, the gun Thomas was alleged to have brandished was never presented at trial. Beale claimed that he threw out the gun while driving to his uncle’s home after the shooting. Further, Beale testified at trial that when he entered the apartment he only had intentions of talking to Taylor. There was no evidence presented that words were exchanged between Taylor and Beale once Beale entered the home. Testimony established that Beale hit Taylor very quickly upon entering her home. Under these facts, this Court cannot say the trial court erred in failing to grant a heat-of-passion or an imperfect self-defense manslaughter instruction. Therefore, we affirm the trial court’s denial of the manslaughter instructions.
 

 V. WHETHER THE TRIAL COURT LACKED IMPARTIALITY
 

 THROUGHOUT THE TRIAL.
 

 ¶ 26. Beale argues that the trial court showed bias against him during the trial through the court’s continual sustaining of objections. Beale claims that this display of bias toward him and his counsel prevented him from obtaining a fair trial. Beale argues that the trial court’s continually sustaining objections to his proof at trial compromised his attorney’s credibility with the jury and also sent a message to the jury that the trial judge wanted it to convict Beale. Beale cites to
 
 Thompson v. State,
 
 468 So.2d 852 (Miss.1985) and
 
 West v. State,
 
 519 So.2d 418 (Miss.1988) in support of his argument. In
 
 Thompson,
 
 the supreme court found reversible error where “the court initiated a series of questions [to the State’s witness] without [any] request from the [S]tate or the defendant which had the effect ... of reconstituting the witness and thereby lending the court’s approval to her testimony before the jury.”
 
 Thompson,
 
 468 So.2d at 853-54. The supreme court reversed and remanded the case, stating that:
 

 [T]he weight and dignity of the court accompanies each question or comment, although not so intended by the judge, and are very likely to be interpreted by the jury as the court’s approval of the witness and her testimony, thereby lending unity to it and thus diverting the jurors’ attention from their responsibility of deciding the case from the evidence, untainted, as heard by them from the witness stand.
 

 Id.
 
 at 854. Additionally, in
 
 West,
 
 the supreme court found thirty:
 

 instances where the trial judge improperly, or unnecessarily, interjected himself into the proceedings. Of those thirty instances, twenty are of the type which may be characterized as coaching the district attorney. On nine occasions, the trial judge posed questions to witnesses where the district attorney’s questions were ineffective. The questions by the trial judge generally served to strengthen the prosecution’s case
 

 West,
 
 519 So.2d at 421. The defense objected to the “extensive instructions from the court to the district attorney as to how to proceed with his cross-examination.”
 
 Id.
 
 The supreme court reversed and remanded the case in light “of the involvement and participation in the trial below by the presiding judge.”
 
 Id.
 
 at 424.
 

 ¶ 27. The State argues that Beale has raised no argument which overcomes the presumption of the trial court’s fairness and impartiality throughout the trial below. We agree. While Beale cites to numerous instances where the trial judge
 
 *702
 
 sustained objections to Beale s proof, those rulings did not amount to reversible error. This issue is without merit.
 

 VI. WHETHER CUMULATIVE ERRORS WARRANT REVERSAL.
 

 ¶ 28. Beale argues that the cumulative effect of the numerous alleged errors by the trial court amount to reversible error. The State argues that there were no reversible errors, and Beale was not denied a fair trial in the case at bar.
 

 ¶ 29. This Court must determine “whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial.”
 
 Byrom v. State,
 
 863 So.2d 836, 847(¶ 12) (Miss.2003). “Where there is ‘no reversible error in any part, ... there is no reversible error to the whole.’ ”
 
 Id.
 
 (quoting
 
 McFee v. State,
 
 511 So.2d 130, 136 (Miss.1987)). It is also well stated that:
 

 upon appellate review of cases in which we find harmless error or any error which is not specifically found to be reversible in and of itself, we shall have the discretion to determine, on a case-by-case basis, as to whether such error or errors, although not reversible when standing alone, may when considered cumulatively require reversal because of the resulting cumulative prejudicial effect.
 

 Id.
 
 at 847(¶ 13). From this Court’s review of the record, we find there was no cumulative prejudicial effect during the trial below that would require reversal of Beale’s conviction and sentence.
 

 ¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.