GRIFFIS, J., for the Court:
¶ 1. Jermorris Pilcher was convicted of the murder of Michael Taylor. He was sentenced to life in the custody of the Mississippi Department of Corrections. On appeal, Pilcher argues that the circuit court erred by failing to declare a mistrial when: (a) the prosecutor made several misstatements of the law during opening statements, and (b) Cordell Phams testified to new information previously unheard by either party. Pilcher asks the Court to reverse his conviction and remand the case for a new trial. We find no error and affirm Pilcher’s conviction and sentence.
FACTS
¶ 2. On the evening of June 14, 2006, the Leflore County Sheriffs Department responded to a call about a shooting at the Delta Apartments in Greenwood, Mississippi. When the officers arrived at the apartment complex, they discovered that Taylor had been shot. Taylor died shortly after the paramedics arrived. The deputies located several individuals who were in the area at the time of the shooting — Deon Prayer, Phams, and Dontay Williams. All three witnesses gave . consistent statements, which implicated Pilcher. Pilcher was arrested and charged with killing Taylor.
¶ 3. At trial, during the State’s opening statement, the prosecutor informed the jury that Williams was a convicted felon. The prosecutor also reminded the jury that, during voir dire, the jurors indicated that they would not hold Williams’s eonvic- *10 tions against him when listening to his testimony. The prosecutor further explained that Williams had witnessed Pil-cher plotting to harm Taylor because of the fact that Taylor grew up in another part of Greenwood.
¶ 4. Pilcher’s counsel objected to these statements and argued that the statements indicated Pilcher was involved in gang activity. The prosecutor responded by asserting that evidence of a neighborhood rivalry would be presented as the motive for the killing. The circuit court allowed the statements, but the court admonished the prosecutor about making any improper statements of law with regard to the weight the jury may place on Williams’s conviction.[1] Pilcher’s counsel later requested a mistrial, which the circuit court denied.
¶ 5. The jury found Pilcher guilty of murder. Pilcher filed a motion for a new trial or, in the alternative, a judgment of acquittal notwithstanding the verdict. The circuit court denied the motion. Pilcher now appeals.
STANDARD OF REVIEW
¶ 6. The Mississippi Supreme Court set out the standard of review for a motion for a mistrial as follows: “Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion.” Caston v. State, 823 So.2d 473, 492 (¶ 54) (Miss.2002) (citation omitted). The supreme court further ruled that “a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial.” Flora v. State, 925 So.2d 797, 804 (¶5) (Miss.2006). Unless “serious and irreparable damage” results from an improper comment, the judge should “admonish the jury then and there to disregard the improper comment.” Id. (quoting Johnson v. State, 477 So.2d 196, 210 (Miss.1985)).
ANALYSIS

1. Whether the circuit court emd by failing to declare a mistrial during the State’s opening statements.

¶ 7. Pilcher argues that the circuit court erred by failing to declare a mistrial during the State’s opening statements after the- prosecutor allegedly made improper statements regarding the law, in the presence of the jury, concerning the weight of evidence that the jurors could place on Williams’s testimony.
¶ 8. During the opening statement, the prosecutor informed the jury that Williams would be testifying as to the details of the shooting. The prosecutor also explained that Williams was a convicted felon. The prosecutor also reminded the jury that, during voir dire, none of the selected jurors had raised their hands when asked whether or not they would hold such a conviction against a witness when considering his testimony. The circuit court admonished the prosecutor that this was the second time that the State had been warned about improper statements of law with regard to the weight the jury may place on Williams’s conviction. Pilcher’s trial counsel later requested a mistrial, which the court denied. However, the circuit court explained the distinction between the proper statements of law with *11 regard to the convictions of witnesses and the statements made by the prosecution.
¶ 9. Pilcher claims that the circuit court abused its discretion by not informing the jury of the correct statements of law and by also allowing the jury to continue throughout the course of the trial to operate under an erroneous understanding of their duties as jurors. Pilcher argues that Williams was the most important witness to testify during the trial, because he was the only witness who actually claimed to see Pilcher shoot the victim. Pilcher submits that he was severely prejudiced; therefore, the circuit court should have declared a mistrial, or the court should have at least corrected the State’s statements to the jury regarding the law.
¶ 10. The record reflects that Pil-cher’s counsel failed to make a contemporaneous objection to the prosecutor’s statement regarding Williams’s conviction and the weight that the jury could give his testimony. Pilcher’s counsel did not object during the State’s opening statements about Williams’ conviction, but he did object to comments made later by the prosecutor about alleged gang activity in the community. When the court addressed this objection, the circuit court also reprimanded the prosecutor for earlier statements about the weight the jurors could give to the testimony of a convicted felon. The “failure to make a contemporaneous objection at trial waives the issue on appeal.” Holland v. State, 656 So.2d 1192, 1197 (Miss.1995); Cooper v. State, 977 So.2d 1220, 1226 (¶ 28) (Miss.Ct.App.2007).
¶ 11. Waiver notwithstanding, the jury was properly instructed about its exclusive duty to weigh the evidence presented. The circuit court instructed the jury, through jury instruction number one, that it must decide how much of each witness’s testimony it believes and how much weight it will give that testimony. Instruction number nine informed the jury that it was the sole judge in determining witness .credibility and assessing the weight to attach to witness testimony. The instruction continued that the jury could accept the testimony of some witnesses, and it could reject that of others, as well as consider a witness’s motive and interest in determining that witness’s credibility. Because juries are presumed to follow the instructions of the trial court, we find that sufficient evidence exists to show that the jury understood that it could consider Williams’s felony conviction against him in determining his credibility and what weight to ascribe to his testimony. Walton v. State, 998 So.2d 971, 977 (¶ 17) (Miss.2008). Accordingly, we find this issue is procedurally barred and also without merit.

2. Whether the circuit court erred by failing to declare a mistrial during the testimony of Cordell Phams.

¶ 12. Pilcher argues that the circuit court abused its discretion by failing to declare a mistrial, when requested by the defense, during Phams’s testimony. Prior to the trial, the State provided Phams’s statements made during his interview with the police to the defense, as well as a summary of expected testimony. - At trial, Phams testified to new information regarding the shooting, which was previously unheard by both parties. Pilcher claims that the circuit court should have instructed the jury to disregard Phams’s testimony that referenced the new information.
¶ 13. During the trial, Phams testified that moments before the shooting, he saw Pilcher with a rifle and claimed that Pil-cher told Phams that he was “fixing to knock somebody off.” Phams stated that he saw Pilcher aim the rifle at Taylor, who was walking up the stairs. Phams con *12 ceded that he did not actually see Pilcher pull the trigger, but he saw him immediately before and after he had shot Taylor. Phams testified that after the shooting, Pilcher ran off. Phams also testified that he could identify the gun he saw Pilcher with as a 30.06 because both Phams and his father use that type of gun when they hunt.
¶ 14. On cross-examination, Phams was questioned about the lighting conditions during the time of the murder and was asked whether he was certain that the gun he saw Pilcher with was a 30.06. On redirect examination, the prosecutor also asked Phams how he knew that the gun he saw was a 30.06, and Phams replied: “Because that’s — the boy that gave him the gun.... ” Pilcher’s counsel objected, and both parties approached the bench.
¶ 15. At the bench conference, both parties asserted that they were unsure about what Phams was referencing or what he was about to say. The prosecutor maintained that the question simply asked Phams about the description of the gun. The circuit court agreed that the partial answer was non-responsive to the question asked. ■ The questioning continued.
¶'16. Later, the prosecutor asked Phams to explain what he meant when he said that he had seen an individual known as “Fella” sitting under a tree “in a different area” with Pilcher, who was holding the gun. Phams responded:
Like, this tree — this the [sic] tree he was sitting up under (indicating). Pm way over by the truck (indicating). So, where the truck parked at, on the side of it, you could see it from right here when he was passing the dude with the gun. And when I was coming from downstairs, that’s when he was passing the dude with the gun.
The prosecutor immediately moved to strike that portion of the testimony. Both parties approached the bench, and they informed the court that they had both interviewed Phams prior to trial, and this was the first time either of them had heard this information.
¶ 17. Pilcher’s counsel moved for a mistrial, but then Pilcher’s counsel asked to be allowed to- voir dire Phams outside the presence of the jury. During the voir dire examination in the judge’s chambers, Phams explained that he saw “Fella” give Pilcher the gun prior to the murder. Phams also stated that he never provided this information to anyone prior to trial, including the police, because no one had specifically asked him if he had seen where Pilcher obtained the gun. The circuit court ruled that it would exclude the new evidence about “Fella” giving Pilcher the gun and instructed Phams not to give any testimony on the stand concerning this new information. Once the jury returned to the courtroom, the circuit judge instructed the jury to disregard the question that Phams was asked right before the recess and to also disregard Phams’s response to the question.
¶ 18. The record and briefs support the assertion that the new information provided by Phams was not known by the State prior to trial. The prosecutor assured the circuit court that he had no intention of eliciting the response given when questioning Phams. After our thorough review of the record, we find that Pilcher suffered no prejudice by the circuit court’s decision to exclude Phams’s statement. The transcript shows that Phams’s statement during his testimony was vague, and he was cut off both times before he could elaborate on the subject. We further note that the circuit court specifically instructed the jury to disregard Phams’s statement about “Fella” and the gun. As previously stated, the jury is presumed to have followed the circuit court’s instruction. Walton, 998 *13 So.2d at 977 (¶ 17). Thus, we find that the circuit court did not abuse its discretion in denying Pilcher’s request for a mistrial. This issue is without merit.
¶ 19. THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE AND MYERS, PJJ., IRVING, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.

. During voir dire, the circuit court cautioned the State not to make improper statements regarding the weight the jury could place on Williams's testimony due to the fact that he is a convicted felon.