# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KA-00489-COA

CARL LEE JORDAN                                                          APPELLANT

v.

STATE OF MISSISSIPPI                                                      APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 02/20/2014 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | MICHAEL W. CROSBY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF AGGRAVATED ASSAULT AND SENTENCED TO FIFTEEN YEARS AND FIVE YEARS AS AN ENHANCEMENT FOR THE USE OR DISPLAY OF A FIREARM IN THE COMMISSION OF A FELONY, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | REVERSED AND REMANDED: 05/24/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.**

**FAIR, J., FOR THE COURT:**

¶1.    Carl Jordan shot David Carter during an argument.  According to Jordan, he did this because he believed Carter was about to shoot him and his fiancée, Tanya, who was Carter's (recently divorced) ex-wife.  At trial, Jordan proffered Tanya's testimony regarding a long

history of abuse and threats by Carter, which Jordan was aware of at the time of the shooting. The trial court found that the evidence was too remote in time because it had largely occurred prior to the separation, about two years before the shooting. We conclude that this was error and that Jordan did not receive a fair trial as a result. We reverse and remand for a new trial.

**FACTS**

¶2. The shooting incident occurred on December 10, 2011, a day Carter had visitation with his three children with Tanya, his ex-wife. The two had divorced several months prior, but they had been separated for several years at this point. Carter took the children to the home of his girlfriend, where, later that day, he encountered Tanya outside the house. According to Carter, Tanya was upset because he had taken their children to his girlfriend's house. She demanded that he hand over the children, but he refused, and she reached into her purse and put her hand on a pistol. Carter asked whether Tanya was going to shoot him, and smiled in a way that he described as intended to diffuse the situation. He again asked her to leave, and she left.

¶3. That night, Carter went out to his truck to get some things for the children, and he saw Tanya and Jordan, who was her boyfriend (or fiancé, depending on the testimony), coming down the sidewalk, apparently on the opposite side of the street. Tanya and Jordan appeared to be intoxicated, and they approached Carter and demanded that he return the children. Carter refused and asked them to leave. He tried to talk to Tanya while Jordan aggressively tried to intercede. At some point, Tanya began laughing, and she drew the pistol from her

purse and handed it to Jordan. Jordan then fired on Carter, as Tanya yelled "no!" Carter turned to run when Jordan pointed the gun at him, but he was hit in the buttocks, which caused him to fall. He then got up and ran, and Jordan pursued and fired several more shots. The shots missed until Carter was rounding the corner of a house, where he was struck in the buttocks a second time. Carter made it into safety at the house of a neighbor who was watching the altercation. The neighbor testified at trial and largely confirmed Carter's account.

¶4. Jordan and Tanya described the incident differently. According to them, they were in the neighborhood to help Tanya's aunt repair a water heater. When Carter saw them outside his girlfriend's house, he became very angry and came outside and began threatening to kill them. Carter was conspicuously carrying a pistol in his waistband, and when he reached for it, Jordan took Tanya's pistol from her purse. Carter began "fumbling" with his gun, apparently attempting to prepare it to fire. This prompted Jordan to fire several "warning shots" to dissuade Carter, but they were not effective. When Carter started to point his gun at Jordan, Jordan shot him twice, and Carter fled. Jordan testified that he aimed low in an effort to avoid killing Carter. When Carter ran, Jordan followed briefly to ensure that he was no longer a threat, but he did not continue firing. Jordan then left the scene at Tanya's suggestion, to avoid a confrontation with Carter's brother, who Tanya warned was nearby.

¶5. Jordan was tried and convicted of aggravated assault. He was sentenced to fifteen

3

years' imprisonment for the underlying offense and an additional five years as an enhancement for the use of a firearm.

## DISCUSSION

¶6.    Jordan contends that the trial court erred in refusing to allow Tanya to testify about the threats, physical abuse, and intimidation she suffered at Carter's hands during their marriage, separation, and divorce.  Jordan proffered Tanya's testimony that, among other things, Carter had held knives and screwdrivers to her neck and choked her.  He boasted he was not afraid of going to prison because he had already been there.  Carter had been violent with his coworkers, leading to him being required to attend therapy – where, with Tanya present, he admitted he had tried to kill her.  He also admitted he had access to weapons.

¶7.    Tanya testified that Jordan was aware of these incidents and that they had escalated during the separation and immediately following the divorce.  During the separation, Carter would come outside her door "all time of the night" and had tried to get inside her house. He had come to her job and threatened her, leading to her coworkers locking her in a bathroom.  Carter was angry about Tanya's relationship with Jordan and had told one of their children he intended to murder Tanya and Jordan.  Tanya knew Carter to act on his threats when he was able to do so.

¶8.    Tanya also testified that Carter and his brother were members of a street gang, where Carter was a "kingpin."  Members of Carter's gang were sometimes with him when he threatened or intimidated Tanya or Jordan, and Tanya had told Jordan to leave the scene of

4

the shooting because she expected the gang to retaliate against him.

¶9.    The prosecution objected to this testimony on two separate bases.  Initially, the prosecutor argued that the testimony had not been disclosed in a timely fashion – that it had been revealed by email at approximately 4 p.m. the day before the trial.  The defense attorney responded that the gist of the testimony had been known by the prosecution and that the emails had been sent out of an abundance of caution in response to the prosecution's stated intent to move to suppress the testimony.  The trial judge agreed that any ruling would be premature until after the prosecutor met with Tanya pursuant to the procedure outlined in Rule 9.04 of the Uniform Rules of Circuit and County Court Practice.  After meeting with Tanya, the prosecutor apparently withdrew the motion, as the issue was never revisited on the record.  Ultimately, the testimony was excluded on the basis that it was inadmissible character evidence, more prejudicial than probative, or too remote from the shooting incident to be relevant.

¶10.    Yet, on appeal, the State seems to contend that the trial judge ruled the testimony inadmissible because of the alleged discovery violation.  This is simply not the case, and it would be impossible for an appellate court to resolve the sharply conflicting accounts of the prosecutor and defense attorney to find a discovery violation when the trial judge did not. "Exclusion of evidence is a radical sanction that ought be reserved for cases in which the defendant participates significantly in some deliberate, cynical scheme to gain a substantial tactical advantage." *Myers v. State*, 145 So. 3d 1143, 1149 (¶15) (Miss. 2014) (citation and

5

quotation marks omitted).

¶11.    Otherwise, the State offers no response to the issue other than the naked assertions, in its statement of the issue and the summary of its argument, that the trial court was correct in finding the testimony too remote.  The State does not address the remoteness claim whatsoever in the argument section of its brief.  Mississippi Rule of Appellate Procedure 28(c) requires that the brief of the appellee, like the brief of the appellant, contain an argument in support of its contentions, and that argument must be supported by citations to authority and to the record.  *See* M.R.A.P. 28(a)(6).  "An appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant." *Chatman v. State*, 761 So. 2d 851, 854 (¶9) (Miss. 2000) (citation and quotation marks omitted).  The same rule applies where the appellee files a brief, but fails to address an issue.  *See In re Estate of Estes*, 111 So. 3d 1223, 1231 (¶38) (Miss. Ct. App. 2012).

¶12.    "[A]utomatic reversal is not required if this Court can say with confidence that the case should be affirmed."  *Chatman*, 761 So. 2d at 854 (¶9).  But we are "not obligated to search the record on the appellee's behalf in order to counter or subvert the appellant's argument."  *Estes*, 111 So. 3d at 1231 (¶38).

¶13.    After reviewing the record, we are far from being able to say with confidence that the case should be affirmed.  Mississippi Rule of Evidence 404(a)(2) specifically provides an exception to the general rule against character evidence in self-defense cases:

> **(a) Character Evidence Generally.** Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in

6

conformity therewith on a particular occasion, except:

. . . .

(2) Character of Victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution to rebut evidence that the victim was the first aggressor[.]

The comment adds the following:

The fact that a "bad" man rather than a "good" man was murdered or beaten is inconsequential. *Spivey v. State*, 58 Miss. 858 (1881). Under specific circumstances, however, the character of a victim may be relevant. This would most likely arise in instances where the defendant claims that the victim was the initial aggressor and that the defendant's actions were in the nature of self-defense.

"[I]t has long been the rule in this State that when the question of who was the aggressor in either a homicide or assault with a deadly weapon prosecution, proof of the victim's bad reputation for violence or threats that he has made against the defendant is competent."

*McDonald v. State*, 538 So. 2d 778, 779 (Miss. 1989) (listing authorities).

¶14.    At trial, the trial judge seems to have held that specific acts evidencing the victim's character were not admissible for that purpose. It is true that character evidence ordinarily may be offered only in the form of testimony as to reputation or opinion, with specific instances of conduct being limited to cross-examination. M.R.E. 405. However, Rule 405(b) allows proof of specific instances of conduct to be directly admitted "[i]n cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense." Our supreme court has held that a character trait of "violence" of the victim is an

7

essential element of self-defense, and that specific instances of conduct of the victim are admissible as direct proof of the victim's character. *Jackson v. State*, 784 So. 2d 180, 184-85 (¶23) (Miss. 2001) (citing *Newsom v. State*, 629 So. 2d 611, 613-14 (Miss. 1993)); *see also Green v. State*, 614 So. 2d 926, 934-35 (Miss. 1991); *Heidel v. State*, 587 So. 2d 835, 845 (Miss. 1991).

¶15. Also, under pre-rules Mississippi caselaw, there was a requirement that the defendant show an "overt act by the victim that could be construed as aggression" before evidence of the victim's character would be at issue, but the supreme court has recently suggested that the requirement has been abrogated by the adoption of the Rules of Evidence, and that the concerns underlying the requirement should now be addressed to the Rules, specifically Rules 401 and 404. *See Richardson v. State*, 147 So. 3d 838, 842-43 (¶¶18-19) (Miss. 2014).

¶16. As to remoteness, the trial judge seems to have made that finding based on his view that the evidence was admissible, if at all, only under Rule 404(b). A finding that some of the incidents were too remote for non-character purposes under Rule 404(b) does not equate to a finding that the incidents were too remote to evidence Carter's character under Rule 405.

¶17. That being said, we are also not convinced that the trial court was correct in ruling the incidents inadmissible under Rule 404(b). Evidence of prior violent acts of the victim, when known to the defendant, are also relevant and admissible under Rule 404(b) to show the defendant's state of mind at the time of the incident and the reasonableness of his use of force. *Richardson*, 147 So. 3d at 842 (¶16). The same is true of threats made by the victim,

8

when known to the defendant. *McDonald*, 538 So. 2d at 779. Even though we recognize that the trial judge has considerable discretion under Rule 404 in deciding whether proffered evidence is too remote, the fact that the prior incidents were linked with more contemporaneous ones and formed part of a continuing course of conduct weighs in favor of admission. *See May v. State*, 524 So. 2d 957, 965 (Miss. 1988) (noting that remoteness under the Rules of Evidence is a Rule 403 question, and that Rule 401 defines relevant evidence very broadly).

¶18. Although we find error in the trial court's refusal to allow this evidence, a ruling admitting or excluding evidence cannot amount to reversible error unless it affects a substantial right of a party. M.R.E. 103. The refusal of evidence of the character of the victim affects the defendant's right to a fair trial; and thus reversal is required unless "on the whole record, the error was harmless beyond a reasonable doubt." *Newsom v. State*, 629 So. 2d 611, 614 (Miss. 1993) (citation omitted). Exclusion of evidence of the victim's character is harmless where it was established through other evidence that was admitted. *See id.*; *see also Swindle v. State*, 755 So. 2d 1158, 1170-74 (¶¶41-45) (Miss. Ct. App. 1999).

¶19. Here, the jury was permitted to hear very little of the substance of the proffered testimony. Given that, and that the evidence was sharply conflicting, essentially amounting to a swearing match between Carter and his neighbor and Jordan and Tanya, we cannot say the error was harmless.

**CONCLUSION**

9

¶20.    Given the State's failure to brief the character-evidence issue on appeal, we are to reverse unless we "can say with confidence that the case should be affirmed." *Chatman*, 761 So. 2d at 854 (¶9).  Under the authorities we have previously discussed, that is clearly not the case, and so we reverse Jordan's conviction and remand for a new trial.

¶21.    **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY, FIRST JUDICIAL DISTRICT, IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, JAMES, WILSON AND GREENLEE, JJ., CONCUR. CARLTON, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**