# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01763-COA

**CORDARRYL LAMOND BELL A/K/A**                 **APPELLANT**
**CORDARRYL BELL**

**v.**

**STATE OF MISSISSIPPI**                                 **APPELLEE**

DATE OF JUDGMENT: 10/30/2018
TRIAL JUDGE: HON. MICHAEL M. TAYLOR
COURT FROM WHICH APPEALED: LINCOLN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT: IMHOTEP ALKEBU-LAN
ATTORNEYS FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL
       BY: JEFFREY A. KLINGFUSS
          ALLISON ELIZABETH HORNE
DISTRICT ATTORNEY: DEE BATES
NATURE OF THE CASE: CRIMINAL - FELONY
DISPOSITION: AFFIRMED - 02/25/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GREENLEE, P.J., WESTBROOKS AND McDONALD, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1. On April 22, 2016, a Lincoln County Circuit Court jury indicted Cordarryl Lamond Bell for one count of first-degree murder in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Rev. 2014) and for one count of aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2)(a) (Rev. 2014). Following a jury trial, Bell was found guilty of the lesser-included offense of manslaughter in violation of Mississippi Code Annotated section 97-3-47 (Rev. 2014) and aggravated assault on September 28, 2018. Following his conviction, Bell filed a motion for judgment notwithstanding the verdict

(JNOV) or, alternatively, a new trial on October 9, 2018. After a hearing on his post-trial motion, the trial court denied the relief requested and sentenced Bell to two consecutive terms of imprisonment in the custody of the Mississippi Department of Corrections (MDOC)—twenty years to serve for the manslaughter conviction and twenty years, with ten years suspended and ten years to serve, for the aggravated-assault conviction—to be followed by five years of post-release supervision. Bell appealed, and finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 22, 2016, Bell was indicted for one count of first-degree murder in violation of Mississippi Annotated Code section 97-3-19(1)(a) and one count of aggravated assault in violation of Mississippi Annotated Code section 97-3-7(2)(a). The indictment alleged that Bell was responsible for the murder of Aquarius Nelson and the aggravated assault of Joshua Cole.

¶3. Bell's initial trial in April 2018 resulted in a hung jury. On September 25, 2018, Bell was re-tried. Trial testimony revealed that on November 2, 2015, Bell fatally shot Nelson four times. An autopsy revealed that Nelson was shot once in his face, once in the back of his right arm, and twice in his back.

¶4. On November 2, 2015, Joshua Cole pulled into Vickie Westmoreland's driveway in a white Chrysler. Nelson rode alongside his cousin Cole as a passenger in the vehicle. Cole testified that he and Nelson stopped at Westmoreland's home in Brookhaven to visit and pick up money from her son Andrew Fortson. Fortson was also acquainted with Bell, who was already at Fortson's house visiting when Cole and Nelson arrived. Cole testified that after

2

he drove into Fortson's driveway, Nelson exited the passenger side of the vehicle and began walking toward Fortson's front door.

¶5.     Bell testified that he watched Nelson coming up the walkway and opened the door before Nelson could knock. Bell stated that when he opened the door, his gun was drawn and pointed at Nelson. Bell then instructed Nelson to "stop" and "get back" before firing several rounds at Nelson as he ran back toward Cole's car.

¶6.     Cole testified that he observed the encounter and provided details corroborating Bell's account. Cole stated that after Nelson got back into the car, Bell continued shooting into the vehicle. After escaping the gunfire, Cole quickly proceeded to a nearby hospital so that Nelson could receive medical attention. Nelson was treated by the emergency room staff but later succumbed to his injuries.

¶7.     At his trial, Bell argued a theory of self-defense, asserting that he feared for his life. Bell maintained that he (Bell) believed Nelson was in possession of a gun and came to Fortson's house to shoot him (Bell). Bell proffered testimony that he feared Nelson because of rumors that Nelson was a culpable party in the unrelated murder of a young lady named Bridget London. However, Bell did not present any admissible evidence connecting Nelson with the incident. Bell also testified that Calvin Haynes, Cole's brother, was actually driving the white Chrysler during the incident, not Cole. Although Nelson retreated after seeing Bell's gun, Bell claims Nelson was about to draw a weapon as he was walking away. No weapon was found in the vehicle, and the only casings found at the scene were spent from Bell's firearm. Bell also testified that he continued shooting into the car because he believed

3

Calvin was going to shoot him (Bell), declaring that "if I didn't shoot him, he was going to shoot me." Bell theorized that after the shooting but before reaching the hospital, Calvin met Cole to swap places and dispose of the weapons. It was determined that six minutes elapsed between the initial 911 calls reporting the shooting incident and the call from the local hospital when Nelson arrived.

¶8.     On September 28, 2018, the jury found Bell guilty of manslaughter, a lesser-included offense set forth in Mississippi Code Annotated section 97-3-47, and aggravated assault as charged in the indictment. Bell filed a subsequent motion for a JNOV or, in the alternative, a new trial on October 9, 2018. Following a hearing, the court denied Bell's motion. On October 30, 2018, the court sentenced Bell to serve two consecutive terms of imprisonment in the custody of the MDOC—twenty years to serve for the manslaughter conviction and twenty years, with ten years suspended and ten years to serve, for the aggravated assault conviction—to be followed by five years of post-release supervision. Aggrieved, Bell filed the instant appeal.

## STANDARD OF REVIEW

¶9.     "We review the trial court's evidentiary rulings for an abuse of discretion." *Newell v. State*, 175 So. 3d 1260, 1275 (¶31) (Miss. 2015) (citing *Parvin v. State*, 113 So. 3d 1243, 1246 (¶12) (Miss. 2013)). We review the trial court's analysis and application of the law de novo. *Richardson v. State*, 147 So. 3d 838, 841 (¶13) (Miss. 2014).

¶10.     "Whether to grant a motion for mistrial is within the sound discretion of the trial court. The standard of review for denial of a motion for mistrial is abuse of discretion." *Pilcher v.*

*State*, 57 So. 3d 8, 10 (¶6) (Miss. Ct. App. 2010) (citing *Caston v. State*, 823 So. 2d 473, 492 (¶54) (Miss. 2002)). The Mississippi Supreme Court has held that "a trial judge is best suited to determine the prejudicial effect of an objectionable remark and is given considerable discretion in deciding whether the remark is so prejudicial as to merit a mistrial." *Flora v. State*, 925 So. 2d 797, 804 (¶5) (Miss. 2006); *see also Pilcher*, 57 So. 3d at 10 (¶6). "Unless 'serious and irreparable damage' results from an improper comment, the judge should 'admonish the jury then and there to disregard the improper comment.'" *Pilcher*, 57 So. 3d at 10 (¶6) (quoting *Flora*, 925 So. 2d at 804 (¶5)).

¶11. "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Newell v. State*, 49 So. 3d 66, 73 (¶20) (Miss. 2010) (citing *Davis v. State*, 18 So. 3d 842, 847 (¶15) (Miss. 2009)).

## DISCUSSION

### I.   Whether the court erred in limiting Bell's testimony.

¶12. Bell argues that the trial court erred by limiting his testimony regarding the belief that Nelson would "kill him like he did Bridget London." In his proffered testimony, Bell indicated that he was afraid of Nelson. Bell claims that Sharon London told him that Bridget's family believed Nelson was responsible for her death. According to Bell, Sharon said that Nelson killed her sister Bridget when she came to answer the door. Sharon was not called as a witness, and Bell did not allege any further connection between Bridget's murder and the present case. Likewise, there was no proof that Nelson had been charged or even

5

investigated in connection to Bridget's death.

¶13.    The State raised an objection to the testimony, which the court sustained.  After deliberating, the court ultimately ruled that the allegation regarding Nelson's involvement in Bridget's death was improper character evidence and inadmissible.  However, the court did instruct Bell that he could still testify about being afraid of Nelson and discuss any information about which he had personal knowledge or adequate proof.

¶14.    Bell now contends that he should have been allowed to present the testimony to the jury as character evidence under Mississippi Rule of Evidence 404(b), which provides

> (1) . . . Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) . . . This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

Bell claims that his statements regarding Nelson's alleged involvement in Bridget's murder fell within the permitted uses for another purpose—evidence of his state of mind.

¶15.    In support of his position, Bell cites *Richardson v. State*, 147 So. 3d 838, 840 (¶¶6-7) (Miss. 2014), where the defendant sought to testify regarding his first-hand knowledge of the victim's "violent criminal history," including multiple convictions and violent acts involving Richardson.  The Mississippi Supreme Court reversed the trial court's decision to exclude Richardson's testimony, finding that Richardson's self-defense claim was "significantly hampered" by the trial court's decision.  *Id.* at 843 (¶23).  Unlike Richardson, Bell was not an involved party in the alleged incident between Nelson and Bridget.  Further, Bell offered

6

no first-hand knowledge of the allegation, having conceded that his belief was solely based on rumors Bell claims to have heard from Bridget's sister and others in the community.

¶16.   *Jordan v. State*, 211 So. 3d 713, 715 (¶¶4, 6) (Miss. Ct. App. 2016), also involved the admissibility of state of mind testimony under a self-defense theory.  Citing *Richardson*, this Court held that the trial court had improperly excluded the testimony of Jordan's fiancée, Tanya, about "threats, physical abuse, and intimidation she suffered at the hands of the [victim]." *Jordan*, 211 So. 3d at 715 (¶6).  As the victim's ex-wife, Tanya was the subject of violent incidents allegedly linked to an argument that preceded the shooting for which Jordan was convicted.  *Id.* at 714 (¶1).  Jordan and Tanya testified that Carter initiated the conflict and approached them with a firearm at his waist while threatening to kill them; Carter and a neighbor gave a conflicting account of the events.  *Id.* at 714-15 (¶¶3-4).  This Court recognized that "it has long been the rule in this State that when the question of who was the aggressor in either a homicide or assault with a deadly weapon prosecution, proof of the victim's bad reputation for violence or threats that he has made against the defendant is competent." *McDonald v. State*, 538 So. 2d 778, 779 (Miss. 1989).

¶17.   "Evidence of prior violent acts of the victim, *when known to the defendant*, are also relevant and admissible under Rule 404(b) to show the defendant's state of mind at the time of the incident and the reasonableness of his use of force." *Jordan*, 211 So. 3d at 717 (¶17) (emphasis added) (citing *Richardson*, 147 So. 3d at 842 (¶16)). Unlike *Richardson* and *Jordan*, Bell does not profess to have any personal knowledge of Nelson's involvement in Bridget's death and did not offer testimony from her family (from whom he claims he got the

7

information) or anyone else with first-hand knowledge of Nelson's alleged involvement or the purported police investigation surrounding Nelson. Bell's testimonial evidence was based on rumors and unsubstantiated information from Bridget's family and other unidentified parties. Further, the court did not prohibit Bell from testifying about his state of mind or fear of Nelson at the time of the incident—only the portion of Bell's testimony that attributed Bridget's murder to Nelson. Therefore, we find the trial court did not abuse its discretion in ruling the disputed evidence was not relevant or admissible under Rule 404(b). Accordingly, we find this issue is without merit.

**II.     Whether the court erred in denying Bell's motion for a mistrial.**

¶18.    In his second assignment of error, Bell alleges the court abused its discretion by denying his motion for a mistrial after the State's prejudicial remarks during closing arguments. The State's attorney indicated that he knew (employing the phrase "I know") the witness and aggravated-assault victim, Cole, was in the vehicle on the date of the incident. The State's remark was in response to Bell's allegation that Cole was dishonest about his presence at the crime scene and perjured himself on the witness stand.

¶19.    The State argues that the comments made by the prosecutor were "permissible deductions drawn from the evidence" and that the prosecutor's use of the phrase including "I know" (as was the case here) did not necessarily render his statements improper, citing *Caston v. State*, 823 So. 2d 473, 495-96 (¶72) (Miss. 2002).

¶20.    In response to Bell's objection to the remarks, the trial court sustained the objection and ordered the jury to disregard the prosecution's comments. However, the court denied

8

Bell's subsequent request for a mistrial, reasoning that the court's admonishment of the jury was sufficient. The court also noted that Bell's attorney invited the comments on "what the prosecutor knew" with statements made in his closing argument.

¶21.    "Mississippi courts have long recognized that a prosecutor has a right to comment on the evidence. However, like other courts, this State does not allow a prosecutor to comment on his personal beliefs about a defendant's guilt or innocence." *Mack v. State*, 650 So. 2d 1289, 1320-21 (Miss. 1994). In *Mack*, the Mississippi Supreme Court acknowledged that by repeatedly employing the phrase "'I know' as oppose to what the state or 'we' know may have suggested to the jury that the prosecutor had some information or knowledge that was not presented to the jury." *Id.* at 1321. The Court went on to state that the State's use of the pronoun "'I' would have been permissible had he not repeatedly used [it]." *Id.* Nevertheless, the Court determined that though improper, the prosecutor's conduct was harmless error. As was the case in *Mack*, "[h]ere the prosecutor's remark did not rise to a level as to suggest to the jury that someone other than the jury had the power to decide Mack's fate. The prosecutor's comments never lead the jury to believe that the jury was not the final arbiter of Mack's destiny." *Id.* at 1322. As the State points out, *Mack* is easily distinguishable from the case sub judice, where there was no repeated use of the impermissible language by the prosecutor—only a single instance.

¶22.    Bell also cites *Sheppard v. State*, 777 So. 2d 659, 661 (¶6) (Miss. 2000), where during closing argument, the "prosecutor stated that if the jury voted to acquit, he wanted them to call him and explain their rationale of finding the defense witnesses credible, so he could

explain it to the victim's family." The trial court overruled Sheppard's defense counsel's objection to the comment. Reversing this Court's ruling that the trial court's decision was not reversible error, the Mississippi Supreme Court held that "although attorneys are given wide latitude, the prosecutor's remarks . . . had nothing to do with the evidence presented during the trial, nor with any reasonable conclusions or inferences to be drawn from the evidence presented in the case. *Id.* at 661-62 (¶¶7-9). The Supreme Court concluded that the "purpose of the remarks was to prejudice the defense, as well as to give the jurors the impression that if they did not convict, the prosecutor was going to subject them to personal ridicule, embarrassment, and questioning." *Id.* at (¶9). Distinguishable from the current case, the judge in *Sheppard* overruled the defense counsel's objection to the statements, which permitted the error to stand. Here, the defense made a contemporaneous objection to the prosecution's improper comment, which the court sustained. The court promptly instructed the jury to disregard the statement.

¶23.  Further, as the State contends, even if the statements were improper, "[w]here 'serious and irreparable damage' has not resulted, the judge should 'cure' or remedy the situation by 'admonishing the jury then and there to disregard the impropriety.'" *Alexander v. State*, 602 So. 2d 1180, 1182-83 (Miss. 1992). This instance does not rise to the level of *Mack*, where the Court found harmless error had occurred. Also, the trial court's response to Bell's objection was both timely and consistent with applicable precedent. This issue is without merit.

> III.    **Whether the trial court erred in refusing Bell's perjury instruction.**

10

¶24. Finally, Bell argues that the trial court erred by refusing to give his proposed perjury jury instruction, which stated:

> If you believe a witness has committed perjury, you must subject his testimony to additional, heightened scrutiny and caution.

Bell argues that the testimony of Cole, the complaining witness in the aggravated assault, contained several inconsistencies. Bell referenced portions of Cole's cross-examination as support for his requested jury instruction. It is true that during cross-examination, Bell's counsel impeached Cole using pretrial statements. However, the trial court refused Bell's perjury instruction, noting that the court's instructions already addressed the issue of witness credibility by including the following:

> The Court has ruled on the admissibility of evidence; but you, the Jury, are the sole judges of the facts. As sole judges of the facts in this case, your exclusive province is to determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness. You are required and expected to use your good common sense and sound, honest judgment in considering and weighing the evidence of each witness.

The jury also received the State's instruction regarding inconsistent witness testimony, which provided in pertinent part:

> [i]n weighing a discrepancy by a witness or between witnesses, you should consider whether it resulted from an innocent mistake or a deliberate falsehood, and whether it pertains to a matter of importance or an unimportant detail.

> You may reject or accept all or any part of a witness' testimony and you may reject part and accept other parts of a witness' testimony.

> After making your own judgement, you must give the testimony of each witness the credibility, if any, you think it deserves.

¶25. The court determined that the perjury instruction presented by Bell was improper

because it failed to state the elements of perjury, and more importantly, there was no charge of perjury presented at Bell's trial.[1] "The general rule is that a statement of [the] accused, directly contradicting that upon which the perjury is assigned, is not sufficient evidence of the falsity of the latter, but other additional extrinsic evidence is necessary to establish its falsity." *McFee v. State*, 510 So. 2d 790, 792 (Miss. 1987). The alleged falsity must be "proved by two witnesses, or by one witness and corroborating circumstances." *Id.* Although Cole offered inconsistent testimony, this fact alone does not entitle Bell to a perjury jury instruction, especially at a proceeding where Cole was not charged. The proposed instruction was misplaced and inapplicable to Bell's trial.

¶26. It is well established that "[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." *Ronk v. State*, 172 So. 3d 1112, 1125 (¶20) (Miss. 2015) (quoting *Agnew v. State*, 783 So. 2d 699, 702 (¶6) (Miss. 2001)).

---

[1] Mississippi Code Annotated section 97-9-59 (Rev. 2014) provides the following definition of perjury:

> Every person who shall wilfully and corruptly swear, testify, or affirm falsely to any material matter under any oath, affirmation, or declaration legally administered in any matter, cause, or proceeding pending in any court of law or equity, or before any officer thereof, or in any case where an oath or affirmation is required by law or is necessary for the prosecution or defense of any private right or for the ends of public justice, or in any matter or proceeding before any tribunal or officer created by the Constitution or by law, or where any oath may be lawfully required by any judicial, executive, or administrative officer, shall be guilty of perjury, and shall not thereafter be received as a witness to be sworn in any matter or cause whatever, until the judgment against him be reversed.

¶27. The given jury instructions had already properly instructed the jury on making determinations of credibility with regard to the testimony of the witnesses. Bell's proposed instruction on perjury lacked the required elements and was unwarranted absent a charge of perjury against Bell, the party on trial. This issue is without merit.

¶28. For the reasons stated above, we affirm Bell's convictions and sentences.

¶29. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

13