ROBERTS, J.,
for the Court:
¶ 1. After a jury trial in the Franklin County Circuit Court, Eric James Foster was convicted of one count of armed robbery, and he was sentenced to serve forty years in the custody of the Mississippi Department of Corrections (MDOC). As a result of his conviction and sentence, Foster now appeals arguing that the verdict is not supported by the weight of the evidence and that his sentence is illegal. Finding no error, we affirm Foster’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
¶ 2. On the afternoon of December 2, 2009, Bank of Franklin tellers Debbie Smallwood and Pat Langston were at their desks when two masked men dressed in camouflage burst through the door. The men jumped over the counter, knocking Langston out of her chair and to the floor, and they were yelling to give them the money. Smallwood testified that one of the men was carrying a large knife. Smallwood and Langston both testified that they feared serious injury or death during the robbery. After taking money from the vault as well as from both the tellers’ desks, the two men left the bank with approximately $92,000.
¶3. Police ultimately arrested Donald James Wilson, Tyrone Butler, and Foster as the men responsible for committing the crimes. Foster was indicted for armed robbery, and his trial began on October 18, 2011.[1] At trial, Smallwood and Langston testified in great detail about the armed robbery. Butler also testified for the State. He testified that he had spent the morning drinking and smoking with Wilson and Foster when they decided to go to *1047 the gas station to get something. Wilson indicated that he needed to stop by the Bank of Franklin to cash a check and then told Butler that he had “a plan to do something wrong.” Butler admitted to being the getaway-car driver and to picking them up after the robbery occurred. He testified that Foster and Wilson were wearing camouflage and carrying a blue bag and a white bag filled with money. Foster and Wilson gave Butler over $6,000 of the stolen money. Additionally, the State presented the testimony of the bank’s president and Officer David Blackwell.
¶ 4. The defense called Jewel Farmer and Carlotta Gray. Farmer testified that the day of the robbery she saw two men running away from the bank wearing camouflage. They got in a white truck. She described their heights and builds, but could not identify either of the men. Gray testified that she was personal friends with Foster and that he would come eat lunch with her every day, including the day of the armed robbery. She admitted that she had never informed the police that Foster had eaten lunch with her until Foster’s attorney asked her later. Foster then took the stand in his own defense, and it was his primary contention that he had not left his house the day of the armed robbery and that Gray had brought him lunch that day. He farther testified that he had never even met Wilson. Foster was also questioned about his purchase of a new car shortly after the robbery occurred. This purchase resulted in a conviction of receiving stolen property. He claimed that he had earned the money from working on cars and “hustling.” However, Foster also testified that he had not been working on cars much around that time due to the weather conditions.
¶ 5. After hearing the testimony and evidence presented, the jury deliberated and returned a verdict finding Foster guilty of armed robbery. The circuit judge sentenced Foster to serve forty years in the custody of the MDOC. Foster filed a motion for a judgment notwithstanding the verdict and a motion for a new trial, and the circuit court denied both motions. Foster appeals and raises the following two issues:
I. Whether the verdict is supported by the weight of [the] evidence?
II. [Whether] Foster’s sentence [is] illegal?
STANDARD OF REVIEW
¶ 6. A motion for a new trial is a challenge to the weight of the evidence, and “we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (citation omitted). The evidence must be viewed in the light most favorable to the verdict. Id.
¶ 7. As for Foster’s claim that his sentence is illegal, “[o]ur standard of review for a trial court’s imposition of a sentence is abuse of discretion. ‘Sentencing is within the complete discretion of the trial court and [is] not subject to appellate review if [the sentence imposed] is within the limits prescribed by statute.’ ” Williams v. State, 5 So.3d 496, 505 (¶ 26) (Miss.Ct.App.2008) (quoting Nichols v. State, 826 So.2d 1288, 1290 (¶10) (Miss.2002)).
ANALYSIS
I. WEIGHT OF THE EVIDENCE
¶ 8. Foster’s primary argument on this issue is that his conviction rests solely on the testimony of Butler, a co-conspirator and habitual offender. According to Foster, Butler’s testimony implicating Fos *1048 ter was “unreasonable, contradictory!,] and impeached on several fronts.” Citing Flanagan v. State, 605 So.2d 753, 758 (Miss.1992), Foster submits that when the only evidence presented is the testimony of alleged co-conspirators, and this testimony is found to be conflicting, self-serving, and unworthy of belief, it is “inadequate as the sole evidence upon which to sustain a conviction.”
¶ 9. Foster was charged with violating Mississippi Code Annotated section 97-3-79 (Rev.2006), which states: “Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery. ...” The Mississippi Supreme Court consistently has held that “[t]he uncorroborated testimony of an accomplice may be sufficient to sustain a guilty verdict.” Catchings v. State, 394 So.2d 869, 870 (Miss.1981) (citations omitted). As Foster points out in his brief, accomplice testimony should be viewed with caution and “must be reasonable, not improbable, self-contradictory[,] or substantially impeached.” Id.
¶ 10. The record is clear to us that Butler’s testimony was corroborated in part by Smallwood, Langston, and Farmer. All three witnesses described the camouflage clothing the men were wearing during and after the robbery; Butler also testified that when he picked Foster and Wilson up after the robbery, they were wearing camouflage. Butler’s testimony regarding the color of the getaway truck was again corroborated by Farmer. Additionally, Butler testified that Foster and Wilson were carrying a blue bag and white bag when they got back into the truck. This fact was corroborated by the bank’s surveillance video and the testimony of Smallwood and Langston. There is no doubt that Butler’s testimony attempted to minimize his culpability; however, his testimony was not unreasonable, improbable, self-contradictory, or substantially impeached. He admitted he received and spent approximately $6,000 from the proceeds of the armed robbery, possibly as payment for being the getaway driver. A large part of Butler’s testimony was corroborated by other evidence or testimony; therefore, we cannot find that his testimony was inherently unreliable or substantially impeached.
¶ 11. Further, it is well-settled law that the jury determines the credibility of the witnesses and resolves conflicts in the evidence. Davis v. State, 866 So.2d 1107, 1112 (¶ 17) (Miss.Ct.App.2003). In the present case, the jury heard the testimony of Butler, Smallwood, Langston, and Farmer and weighed this testimony against the testimony of Foster and Gray. Based upon its return of a guilty verdict, the jury resolved any conflicts in favor of the State. We cannot find that the jury’s verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.
¶ 12. This issue is without merit.
II. ILLEGAL SENTENCE
¶ 13. Foster next claims that his sentence is illegal because it exceeds his life expectancy. However, the claim that Foster’s forty-year sentence is illegal was never presented to the circuit court for consideration. The record demonstrates that Foster’s attorney did not object to Foster’s sentence before, during, or after sentencing. Additionally, his attorney filed two post-trial motions raising a variety of issues, none of which included the legality of the sentence. “Under Missis *1049 sippi law, if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for [a] new trial.” Ross v. State, 603 So.2d 857, 861 (Miss.1992) (citations omitted). Because Foster did not preserve the issue at trial or in his post-trial motions, the only available avenue for review would be under the plain-error doctrine. A plain-error analysis “includes a determination of whether there is an error that is some deviation from a legal rule; whether the error is plain, clear[,] or obvious[;] and whether the error is prejudicial in its effect upon the outcome of the trial court proceedings.” Fleming v. State, 790 So.2d 888, 892 (II8) (Miss.Ct.App.2001) (citing Porter v. State, 749 So.2d 250, 260-61 (¶ 36) (Miss.Ct.App.1999)).
¶ 14. Prior to commencement of trial, the State announced that it would not be submitting the question of a life sentence to the jury. Foster was sentenced on October 17, 2011. During sentencing, the circuit court stated that Foster could be sentenced to “any sentence less than life, not less than three years.” A circuit court must “make a record of and consider all relevant facts necessary to fix a sentence for a definite term reasonably expected to be less than life. The [circuit] court should consider the age and life expectancy of the defendant and any other pertinent facts which would aid in fixing a proper sentence.” Stewart v. State, 372 So.2d 257, 259 (Miss.1979). The circuit court acknowledged in Foster’s sentencing order that it considered the following before sentencing Foster to forty years in the custody of the MDOC: “the seriousness of the crime, the impact on the victims, ... [Foster’s] prior conviction of aggravated assaultf,] and [Foster’s ] age of thirty-five.” One victim, Langston, testified at sentencing regarding the impact of Foster’s violence during the bank robbery on her life. Foster also gave a statement at his sentencing in which he adamantly refused to accept any responsibility for his actions and stated in open court and in the victim’s presence: “Why you sit there, I done f-d your life up. You f-d your own life up.” The record is clear that the circuit court did properly consider relevant factors, including Foster’s vulgarity in the victim’s presence, when sentencing Foster to forty years in the custody of the MDOC.[2]
¶ 15. A circuit court may take judicial notice of actuarial tables pursuant to Henderson v. State, 402 So.2d 325, 328 (Miss.1981). However, Foster neither submitted an actuarial table for the circuit court to consider nor asked the circuit court to take judicial notice of an actuarial table. Any taking of judicial notice in this case was discretionary by the circuit judge. The very first time this issue has been raised for review is on this direct appeal where Foster attached two actuarial tables to his brief for this Court to review. These actuarial tables are not proper for our review. It is clear precedent that “through the record, the appellant must establish any facts underlying a claim of error. This Court cannot review an allegation of error without having before it a reviewable record; nor can this Court ... rely on assertions of fact in an appellant’s brief.” Ross, 603 So.2d at 861.
*1050 ¶ 16. Further, even if the actuarial tables are appropriate to judicially notice on appeal and the plain-error doctrine applies, those tables show the life expectancy for a thirty-five-year-old American citizen to be from 44.6 to 45.6 years. Foster’s sentence was only forty years, well below the life expectancy according to the actuarial tables presented. Moreover, the armed robbery occurred on December 2, 2009. Foster was arrested thereafter and was convicted on October 18, 2011. Foster was also in custody on May 19, 2011, when he had a preliminary hearing, was bound over to the grand jury, and had a $200,000 appearance bond set. Even though the record before us does not specify the total length of Foster’s pretrial custody, it appears to be significant since Foster was adjudged an indigent and unable to post bond. When the circuit judge announced the forty-year sentence, he simultaneously gave Foster credit for all of his pretrial custody time pursuant to Mississippi Code Annotated section 99-19-23 (Rev 2007). This ultimately shortened Foster’s announced sentence to under forty years.
¶ 17. In 2001, the Mississippi Supreme Court held that Eddie James Shorty was procedurally barred from claiming his thirty-year sentence exceeded his life expectancy. Cox v. State, 793 So.2d 591, 599 (¶ 38) (Miss.2001). Neither the State nor Shorty introduced any actuarial tables into evidence, and Shorty was sentenced to a sentence the circuit judge reasonably believed to be less than life. Id. at 598-99 (¶ 32). Shorty also did not object to his sentence at any time until his appeal. Id. at 599 (¶ 33). According to the supreme court, Shorty “failed to show any error, much less plain error.” Id. at (¶ 34). Ultimately, the supreme court found that Shorty failed to show that his sentence exceeded the maximum sentence allowed, “and[J in any event[, Shorty] is procedurally barred from raising [this issue] at this time.” Id. at (¶ 38). The Cox case is clearly on point and controlling.
¶ 18. Ultimately, we are barred from reviewing this issue because Foster did not properly preserve it for appeal, and with the record currently before us, there appears to be no error, plain or any other kind, in Foster’s forty-year sentence.
¶ 19. THE JUDGMENT OF THE FRANKLIN COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF FORTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FRANKLIN COUNTY.
GRIFFIS, P.J., CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. LEE, C.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., BARNES AND ISHEE, JJ.

. Butler was a co-indictee; however, for the purposes of this appeal, we only address Foster’s claims. Foster was tried alone.

. We note that this Court recently affirmed the identical sentence of forty years on Foster’s equally culpable co-defendant, Donald James Wilson, for his involvement in the same bank robbery. Wilson v. State, 102 So.3d 1200, 1208 (¶39) (Miss.Ct.App.2012). The mandate issued on June 5, 2012. No issue was made of Wilson's forty-year sentence on appeal.