# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-01554-COA

MARCELLOS COLEMAN A/K/A MOOSE                    APPELLANT

v.

STATE OF MISSISSIPPI                                          APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/27/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE M. MCMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, MURDER, AND SENTENCED TO LIFE; AND COUNT II, KIDNAPPING, AND SENTENCED TO THIRTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED - 04/25/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.    On June 11, 2015, Marcellos Coleman was convicted in Hinds County Circuit Court for the kidnapping and murder of Duan Penn.  On the murder conviction, Coleman was sentenced to life imprisonment, and on the kidnapping conviction, he was sentenced to thirty

years' imprisonment, with the sentences to run concurrently. Coleman timely appeals and asserts that the circuit court erred in allowing the State to make improper prejudicial comments during its closing argument and, as such, denied him his constitutional right to a fair trial. We disagree. We find that the circuit court did not err, and we affirm Coleman's convictions.

**FACTS**

¶2. On April 11, 2012, at approximately 1:20 a.m., officers with the Jackson Police Department responded to an emergency call regarding a fire. The fire department extinguished the burning object, and the officers discovered that the burning object was the human body of an unidentified male. The body was too badly burned to determine the race of the victim. Fragments of a blue tarpaulin were found near the body, and rope was recovered from the lower right leg of the victim. The body was found near a marshy area, and it appeared the tarpaulin was dragged across the grass to where the body was discovered. Additionally recovered at the crime scene were duct tape around the victim's mouth, rope around the victim's ankles, fragments of what was likely a t-shirt around the victim's neck, and charred socks on each foot.

¶3. The victim's body was not identified until approximately one month after its discovery, when the victim was reported missing by his brother. After using dental records, it was determined that the victim was the man's missing brother, Duan Penn.

¶4. While investigating Penn as a missing person, officers were informed that Coleman, Marcus Shelby, and Janice Pittman were involved in killing Penn. Officers drove to

2

Coleman's house to speak with him and saw a blue tarp in Coleman's yard. They then obtained and executed a search warrant for Coleman's house, where they discovered a blue tarp and a "burn pile" where debris was burned. The officers interviewed Pittman, Coleman's next-door neighbor, and she explained both her and Coleman's involvement in Penn's death.

¶5. Pittman testified that on April 10, 2012, she was asleep with her boyfriend in her house. She explained that she was jarred awake by screaming outside of her window. She testified that she got out bed, walked to her front porch to investigate, and saw four men standing over a man—who was later identified as Penn—on the ground. She said Coleman demanded to know where his stuff was and then kicked Penn. She testified that she saw fire rising from where Penn was on the ground, and that it looked like the men were trying to stomp out the fire. Of the four men, Pittman was only able to identify Coleman and Shelby. She testified that one of the unidentified men approached her and told her that Penn implicated Pittman's daughter in a burglary that had occurred at Coleman's house a few days earlier.[1] The unidentified man asked Pittman if she was going to confront Penn for his allegations, to which she responded affirmatively by hitting Penn approximately four times. After beating Penn, Pittman went back inside her house to change her bloody shirt. She gave the shirt to the unidentified man to put in the burn pile at Coleman's house, and noted that it appeared that Penn's genitals had been burned.

¶6. Pittman said she then saw two men carry Penn into Coleman's back yard. A few

---

[1] A few days prior to the murder, Coleman's house was burglarized while he was in jail overnight. Neighbors implicated Penn in the burglary.

minutes later, she saw two of the men come from the back yard carrying something that was wrapped up and loaded it into the trunk of one of the cars. Coleman then handed her a small gas can from his house and asked her to go get a gallon of gas. She returned with the gas, and the men drove off.

¶7. On cross-examination, Pittman told the jury that a few days earlier, Coleman and Penn had an argument that resulted in Coleman shooting the ground next to Penn's feet. This story was confirmed by another neighbor, Earnest Hendricks, who testified that the argument began when Coleman asked Penn about burglarizing his house. Hendricks testified that on the night of the murder, Penn attended a barbeque at Coleman's house, where Coleman accused Penn of burglarizing his house.

¶8. Sacquana Collins, Pittman's roommate, testified similarly to Pittman. However, Collins said she saw Coleman set a man on fire, and said when the man's body was being carried to the backyard, Coleman gave orders directing the others.

¶9. Coleman testified in his own defense and said that he and Penn had been good friends for several years and that he never suspected Penn of burglarizing his home. He said Pittman told him Penn broke into his home, but he said he did not believe her. Coleman testified that he accidentally shot the gun near Penn and that he was actually telling Penn he would protect him. When he testified at trial, it was clear that Coleman's version of the events differed substantially from Pittman's and the other witnesses'.

¶10. Coleman testified that on the day of the murder, he had friends over for a barbeque to celebrate his birthday. Penn approached him and said that he had information regarding

the burglary that had occurred at Coleman's house a few days prior. He testified that Pittman then confronted Penn and alleged that Penn was spreading rumors about her daughter's involvement in the burglary. The pair exchanged tense language, before Pittman attacked Penn and knocked him down. Coleman testified that this occurred while he was tending to the flaming grill and that he tried to break up the fight, but Pittman's boyfriend was ultimately the one who ended it.

¶11.    Coleman told the jury that after the fight, he went inside his house and fell asleep with his girlfriend, Quinyetta Billups, at approximately 10:15 p.m. He testified that his girlfriend woke him up at midnight, complaining of a noise outside, but the pair fell back asleep until she left the house around 2:00 a.m. Coleman said he then talked on the phone from roughly 2:30 a.m. until 6:00 a.m. with his other girlfriend. Coleman denied that Penn was kidnapped and murdered at his house.

¶12.    Prior to trial, the circuit court declared Billups unavailable under Mississippi Rule of Evidence 804(b)(1).[2] Billups previously testified at an earlier habeas corpus proceeding, and defense counsel read the prior statement into evidence. In the statement, Billups testified that she was with Coleman from approximately 10:00 p.m. until around 2:00 a.m. She said she noticed "a little bit of commotion going on next door," but that nothing occurred at Coleman's house. She testified that Coleman's two sons were the only other people at the house besides her and Coleman.

¶13.    After deliberations, the jury returned guilty verdicts on both counts. Coleman timely

---

[2] After a diligent search, neither the sheriff's office nor a private investigator could locate Billups.

appeals and asserts that the State made improper comments in its closing argument, thus rendering his trial unfair.

## DISCUSSION

¶14.　"The standard of review which this Court must apply to lawyer misconduct during opening statements or closing arguments is 'whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.'" *Wilson v. State*, 194 So. 3d 855, 864 (¶30) (Miss. 2016). "The purpose of a closing argument is to fairly sum up the evidence." *Id*. Prosecutors "are not allowed to employ tactics which are 'inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury.'" *Id*. "The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id*. "[I]mproper remarks made during closing arguments can be harmless error where the evidence of guilt is overwhelming." *Moffett v. State*, 156 So. 3d 835, 858 (¶65) (Miss. 2014).

¶15.　During closing argument, the State discussed Billups's absence from the trial and commented: "Recall this little statement that was read today by a witness who wasn't here. And you're able to use your good common sense and sound, honest judgment. Maybe she didn't—." At that point, defense counsel objected that the State's comment was an improper argument; however, the circuit court overruled the objection saying, "this is closing argument. I'll allow it. I believe the jury can make reasonable inferences from the evidence presented. So I am going to allow it." The State continued its argument asserting that

6

Billups was absent because "maybe she [did not] want to perjure herself. Maybe somebody told her about, that was a crime. I don't know. What I do know is an alibi witness who allegedly was there with [Coleman], didn't face y'all." Defense counsel failed to object at this point.

¶16. Coleman further argues that the State made improper comments when it noted that Coleman had multiple girlfriends and that "to be a cheater you know you got to be extra slick." The prosecutor went further to say that when somebody has multiple girlfriends, "you['re] talking about manipulation [and] [h]ow much more manipulative can you get." Additionally, Coleman asserts that the prosecutor improperly commented that Coleman "hoodwinked our government" because he drew military disability checks. The prosecutor argued that when he had seen Coleman the previous day, nothing appeared to be physically or mentally wrong with him. Defense counsel failed to object to these statements as well.

¶17. "In general, the failure to object to the prosecution's statements in closing argument constitutes a procedural bar." *Ross v. State*, 954 So. 2d 968, 1001 (¶71) (Miss. 2007). Despite the procedural bar, this Court may address the statements if they were "so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶23) (Miss. 2013). We find that the prosecutor's statements were not so inflammatory that the circuit judge should have objected on his own motion. Nor do we find that the natural and probable effect of the improper arguments created unjust prejudice against Coleman. The case presented by the State provided overwhelming evidence of Coleman's guilt, and any error that may have occurred was harmless error.

Therefore, we find that these arguments are without merit, and as such, we affirm.

¶18.   **THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; AND COUNT II, KIDNAPPING, AND SENTENCE OF THIRTY YEARS, WITH THE SENTENCES TO RUN CONCURRENTLY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.**

     **LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.   WESTBROOKS, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**